IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


JUSTIN A. LAZAROFF,

       Appellant,

 v.

Case No. 5D23-19
LT Case No. 2016-CA-003882

LARRY MEEK,

       Appellee.

_____/

Opinion filed May 19, 2023

Appeal from Circuit Court
for Duval County,
Bruce R. Anderson, Jr., Judge.

Warren B. Kwavnick and David F. Cooney,
of Cooney Trybus Kwavnick Peets, Fort
Lauderdale, and Michael P. Regan, Jr.,
Brian M. Guter, Tiffany M. Jones, and
James D. Morgan, of Florida O'Hara
Law Firm, Jacksonville, for Appellant.

Rebecca Bowen Creed, of Creed & Gowdy,
P.A., and Howard C. Coker, Daniel A. Iracki,
Stephen Watrel, and Aaron Spraque, of
Coker Law Firm, Jacksonville, for Appellee.

PER CURIAM.

At issue in this car accident case is the trial court's order granting a new trial based cumulatively on allegedly improper statements by defense counsel during the proceedings in the presence of the jury. The trial court described one category of statements as making the plaintiff's age a theme of the trial, supposedly suggesting that Medicare would cover medical expenses; the other category suggested that the plaintiff was concealing evidence. The impact of improper evidence or argument must be so prejudicial as to vitiate the entire trial to warrant the grant of a new trial. *Salazar v. State*, 991 So. 2d 364, 372 (Fla. 2008); *Barnes v. State*, 303 So. 3d 275, 276 (Fla. 1st DCA 2020).

On the trial record presented, the grant of a new trial was unwarranted because no sufficient basis exists to conclude that the statements individually or cumulatively rose to a level that demonstrated prejudice to the plaintiff. *Moore v. Gillett*, 96 So. 3d 933, 938 (Fla. 2d DCA 2012) ("[W]here a trial court's finding of cumulative error is the basis for the alleged misconduct of defense counsel, and that finding is unsupported by the record, the reviewing court must reverse an order granting a new trial.").

The trial judge concluded that the defense made the plaintiff's age a "theme" of the case, but the plaintiff, who was a sixty-five year old truck

2

driver, was seeking only future economic and non-economic damages, thereby making age a factor in that analysis. Questions regarding life expectancy and retirement were to be anticipated. To some extent, the plaintiff's counsel and expert interjected governmental benefits on their own questions.

In addition, many of the statements at issue were either incomplete or interrupted before they could possibly do any significant harm; and the trial judge gave strong curative instructions to minimize their potential impact. Moreover, several of the statements were made without objection from the plaintiff, reflecting a potential lack of prejudice.

Some of the statements were cut off unilaterally by the trial judge before any objection could be made, despite the existence of a permissible basis for the defense's inquiry. For example, a topic of testimony was the methodology for determining the cost of medical treatment, such as what types of databases are available and what data they contain. It was in this context that defense counsel cross-examined plaintiff's expert witness, asking:

> Q: Who is the—the largest provider—purchaser of healthcare services and products?
>
> A: I don't know or even understand your question.
>
> Q: Okay. Well, Medicare is the entity that purchases the most—

At this point, the trial court—before any objection from the plaintiff—cutoff defense counsel ("I'm going to stop you there."). A sidebar was held, during which the trial judge expressed the belief that defense counsel had intended the use of the word Medicare as a means for the jury to believe that plaintiff's medical care costs would be covered in the future. The trial court asked, "What is the relevance of Medicare and all of this to this case?" to which defense counsel responded, "I was going to ask him if he consulted the Medicare in reference to the cost of the type of items that he put in his health care plan." Defense counsel said the question "was only to establish[] that [the expert] didn't consider a major database of prices and went to some other source instead."

An inquiry about whether an expert used a database that includes Medicare reimbursement rates, by itself, may be benign in this context. Because cross-examination was halted, it cannot be determined whether defense counsel's inquiry would have been benign or for an improper purpose.[1]

---

[1] Medicare reimbursement rates are used as a metric in personal injury protection matters, *see, e.g.*, section 627.736(5), Florida Statutes (2023), and are included as a metric in the recently passed tort reform legislation. *See* Ch. 2023-15, § 22, Laws of Fla. (amending § 768.0427(2), Fla. Stat. (2023)).

As to a curative instruction, the defense counsel suggested that the jury be told that the plaintiff is "not getting Medicare and you shouldn't consider any Medicare" in any way. The trial court used the plaintiff's proposal instead, saying upon the jury's return:

> Court: . . . I have a very important instruction I need to give you so please listen very closely. You may remember where we left off, before the sidebar conference, there was a statement made by defense counsel and I need to give you a very important instruction about that.
> I am granting the plaintiff's motion to strike that statement, so please listen very closely.
> The statement about the greatest purchaser of medical services was improper in this trial. It is stricken from the record. You shall disregard—you shall disregard it and, further, you should not reduce the amount of compensation to which Mr. Meek is otherwise entitled on account of medical insurance payments or other payments from his insurance company or any other governmental source. The court will reduce, as necessary, the amount of compensation of which he is entitled on account of any such benefits.
> And with that, plaintiff's counsel, are you satisfied with the curative instruction?
>
> A: Yes, sir.

Given the defense counsel's question was interrupted, i.e., half-asked, and a very strong curative instruction was given, the potential for prejudice was neutralized. *See Barnes*, 303 So. 3d at 276–77 (stating that proper procedure is to instruct a jury to disregard objectionable remarks "and not that a mistrial be entered by the court, unless the remarks are such that

instructing the jury to disregard them would not cure the error") (citation omitted).

Finally, the trial court's order, which adopted the plaintiff's proposed order verbatim, concludes that two statements, one in opening and one in closing, attempted to imply that the plaintiff had concealed evidence. The opening statement was unobjected to and the closing statement was incomplete and subject to a strong curative instruction, such that they cannot be said to have been so inflammatory and prejudicial as to warrant a new trial. *Salazar*, 991 So. 2d at 372; *Barnes,* 303 So. 3d at 276.

In conclusion, because the reasons for granting a new trial are not supported by the record, the order granting a new trial is reversed and the jury's verdict is reinstated.

REVERSED and REMANDED for entry of a final judgment consistent with the jury's verdict and this opinion.

MAKAR, EDWARDS and HARRIS, JJ., concur.